IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| ECIMOS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-1684 |
| | § | |
| ALLSTYLE COIL COMPANY, L.P., d/b/a | § | |
| ALLSTYLE A/C MANUFACTURING, | § | |
| and TEXAS FURNACE, L.L.C., | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION

ECIMOS, LLC, brings this action against AllStyle Coil Company, L.P. (f/k/a AllStyle Coil Company, Inc.) d/b/a AllStyle A/C Manufacturing, and Texas Furnace L.L.C., and alleges as follows:

### PARTIES

1.     ECIMOS, LLC ("ECIMOS" or "Plaintiff") is a Tennessee limited liability company, with its principal office located at 9821 Camberley Circle, Orlando FL 32836.

2.     AllStyle Coil Company, L.P. (f/k/a AllStyle Coil Company, Inc.) d/b/a AllStyle A/C Manufacturing ("AllStyle") is a Texas limited partnership, with its principal place of business located at 7037 Brittmoore Road, Houston, Texas 77041.[1]  AllStyle Coil Company I, Inc., is AllStyle's general partner. AllStyle may be served with process by serving its registered agent, Cody Lendell Martin, at 7037 Brittmoore Road, Houston, Texas 77041.

3.     Texas Furnace, L.L.C. ("Texas Furnace," and together with AllStyle, "Defendants") is a Texas limited liability company, with its principal place of business located at

---

[1] Upon information and belief, AllStyle Coil Company, Inc., was converted into AllStyle Coil Company, L.P., on or about January 1, 2001.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**                                                    **1**

7037 Brittmoore Road, Houston, Texas 77041. Texas Furnace may be served with process by serving its registered agent, Cody Lendell Martin, at 7037 Brittmoore Road, Houston, Texas 77041.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over ECIMOS' causes of action for copyright infringement pursuant to 28 U.S.C. § 1338.

5.      This Court has supplemental jurisdiction over ECIMOS' state law claims arising under the statutory and common law pursuant to 28 U.S.C. 1367, because ECIMOS' state law claims are interrelated with its federal claims and arise from a common nucleus of operative facts such that the adjudication of ECIMOS' state law claims with its federal clams furthers the interest of judicial economy.

6.      This Court has personal jurisdiction over Defendants who are Texas residents. Moreover, this action arises from their transaction of business within Texas, their tortious acts, and omissions within Texas, and/or entering into a contract for services to be rendered in Texas and for materials to be furnished in Texas.

7.      Venue is proper in this Court pursuant to, at a minimum, 28 U.S.C. § 1391(b)(1) and (2) and 28 U.S.C. § 1400(a).

## FACTS

**ECIMOS Has Developed Highly Technical Product Solutions for HVAC-R Manufacturers**

8.      Plaintiff ECIMOS acquired all of the assets of Electrical Controls, Inc. ("ECI"), a Tennessee corporation, on March 1, 2012.

9.      Stephen G. Olita is the managing member of ECIMOS and was the managing member of ECIMOS at the time it acquired the ECI assets. Prior to the acquisition, Mr. Olita was

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**                    **2**

the founder, the sole owner, managing member and President of ECI. Mr. Olita's responsibilities included, among other things: (1) researching and developing novel products for the heating, ventilation, air conditioning and refrigeration ("HVAC-R") industry as an inventor, author and developer;  (2) overseeing the manufacture and sale of ECI's existing HVAC-R products; (3) overseeing ECI's marketing efforts to expand its customer base to include yet untapped HVAC-R member manufacturing firms; and (4) managing the marketing and sale of ECI's then latest product version of the patented ECI Manufacturing Operating System.

10.     For forty years, ECIMOS[2] has developed highly technical products for the purpose of assisting HVAC-R manufacturers with the manufacture, assembly, testing and processing of HVAC-R products for quality control and safety purposes before those products are shipped to consumers.

11.     The software associated with ECIMOS' product lines consists of more than 27 million lines of program code that uniquely operate over 3 tons of physical products that, when fully assembled, occupy thousands of square feet of floor space at each of its HVAC-R member customers' manufacturing facilities.[3] The HVAC-R industry members are ECIMOS' sole customer-base for its products.

12.     ECIMOS has developed a comprehensive suite of proprietary software products, which are copyright-protected and registered with the US Copyright Office, which are integrated and uniquely interoperable with the ECIMOS Monuments for their operation. ECIMOS branded this product solution for the HVAC-R manufacturing industry as the Integrated Process Control

---

[2] Unless noted otherwise, ECI will be referred to as ECIMOS throughout this Complaint.

[3] The physical components of ECIMOS' IPCS products are commonly referred to as "Monuments" by ECIMOS and those in the HVAC-R industry.  The term "Monument" was coined to reflect the immovable dominating physical presence of the IPCS technology that weighs several tons and occupies thousands of square feet of the HVAC-R manufacturers' facilities.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**                    **3**

System ("IPCS"), which, when all combined, is comprised of seventy-two (72) separate ECIMOS products.

13.     The IPCS can be acquired from ECIMOS in its entirety, *i.e.*, all of the product modules comprising the IPCS, or, depending upon a HVAC-R manufacturer's particular business segment, certain applicable product Monuments of the IPCS can be acquired individually from ECIMOS.

14.     Generally speaking, the ECIMOS products comprising the IPCS, individually and in combination, were designed to make it almost impossible for an HVAC-R manufacturer to ship one of its HVAC-R products to a customer that does not conform to performance specifications, such as, for example, not meeting or exceeding its advertised BTU heating or cooling capacity rating and/or not meeting its SEER energy efficiency rating and/or not operating in a safe manner.  The ECIMOS products serve to enforce and ensure compliance with various industry standards, including those developed by the Air Conditioning, Heating, & Refrigeration Institute ("AHRI"), as well as Underwriters Laboratory ("UL") and OSHA safety standards.

15.     ECIMOS' IPCS, and its components, has been used (or is currently being used) by many industry-leading HVAC-R member manufacturers, including the likes of Carrier Corporation, Rheem Manufacturing Company, Johnson Controls, Inc., d/b/a York, among many others.

16.     Defendants are in the HVAC-R manufacturing industry, and they manufacture residential and commercial heating and cooling products.

**Defendants are HVAC-R Member Manufacturers and Were ECIMOS Customers**

17.     AllStyle manufactures air handlers, refrigerant evaporator coils and condenser units, among other things, all of which are components of an HVAC-R system.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**                    **4**

18. AllStyle's coils can be sold individually to consumers; however, AllStyle's coils are also important components that are integral to the air handler units, hydronic heat units, and heat pump products that AllStyle manufactures.

19. Texas Furnace manufactures gas furnaces, among other things, which is a component of an HVAC-R system.

20. Texas Furnace's gas heater furnaces can use either natural or propane gas as heating fuel and compete with AllStyle's all electric powered heat pump products. However, the two product offerings by Defendants (who share facilities with overlapping directors and/or managers) provide options to their customers and potential customers.

21. AllStyle first became a customer of ECIMOS in 2005, which is approximately the time AllStyle entered into the HVAC-R manufacturer's market place.[4]  In late 2004 and in early 2005, upon request, ECIMOS submitted proposals to AllStyle for the complete ECIMOS IPCS product line which included the ECIMOS' LeakProof[tm] solution.[5]  These proposals included the licensing of the over 27 million lines of program code, as well as the individual Monuments, for ECIMOS' LayIn[tm], KeyScan[tm], LeakProof[tm], VacuCharge[tm], AutoTest[tm] and Packout[tm] Watchdog products.  AllStyle issued a transaction order for these proposals thereby agreeing to ECIMOS' terms and conditions, including the software licensing terms.[6]

---

[4] Upon information and belief, AllStyle had been a manufacturer of mostly coils prior to 2005, and with its sights set on competing in the HVAC-R market it turned to ECIMOS to provide the same IPCS that was instrumental to the success of its soon-to-be competitors, like the leading air conditioning manufacturer in the world, United Technologies Carrier Corporation.

[5] **Exhibit A**, ECIMOS IPCS Proposal Quote No. 1896, dated November 11, 2004; **Exhibit B**, ECIMOS IPCS Proposal Quote No. 2027, dated February 5, 2005.

[6] *See* **Exhibit C**, AllStyle Transaction Order for ECIMOS Quote Nos. 1896 and 2027, dated February 23, 2005.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**                    **5**

22.     Seven years later, in 2012, and following the AllStyle blueprint for success, Texas Furnace became a customer of ECIMOS.[7]  ECIMOS, responding to a request for a quote from Texas Furnace, submitted a written proposal for this integration network scheme on November 17, 2011, included in the AutoTest[tm] Monument for its gas heater furnace. ECIMOS' written proposal was accepted and on January 19, 2012, and Texas Furnace executed the terms of the proposal by issuing its transaction order to ECIMOS accepting its standard terms and conditions, including the licensing agreement. At that time, Texas Furnace, with its non-electric gas fueled heater furnace offering (which had not yet been designed as a smart device), also began to use the ECIMOS IPCS AutoTest[tm] gas-heater testing product pursuant to the same license agreement terms that AllStyle had entered into with ECIMOS in 2005.

### The ECIMOS License Agreements with Defendants

23.     Every proposal sent to HVAC-R member manufacturers, including the Defendants, beginning in November 2004, contained the ECIMOS' standard terms and conditions, which included a section, entitled "ECI Software Licensing Terms."  Like each prior proposal sent to Defendants, the last ECIMOS proposal submitted to AllStyle and Texas Furnace for ECIMOS' Full Function Product Tester also included ECIMOS' standard terms and conditions, which included a section entitled "ECI Software Licensing Terms."  The proposal included the terms for licensing of copyrighted material contained in the integration network scheme of the IPCS, specifically for the AutoTest[tm] Monument for gas heater manufacturers, and for installing and assisting and training Defendants' personnel in the use of the AutoTest[tm]

---

[7] Since the inception of the ECIMOS licensing agreement in 2004, the language of the licensing terms have not changed. All of the HVAC-R member manufacturers (and competitors of both AllStyle and Texas Furnace) who acquired ECIMOS technologies were operating under the same licensing terms during that timeframe as well.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**                    **6**

component of the IPCS.[8]   Texas Furnace issued a transaction order for this proposal thereby agreeing to ECIMOS' terms and conditions, including the software licensing terms.[9]

24.    The ECI Software Licensing Terms, including those attached to the ECIMOS proposals at issue in this lawsuit, contain, among other provisions, the following pertinent provisions:

**Important**

By using ECI software you accept the following terms of this License Agreement. If you do not agree with these terms, you may not use this software and must promptly return it for a refund.

**Ownership**

ECI retains the ownership of the ECI software package. This License confers no ownership in the Software, and confers no rights whatsoever in any associated source code or in any other intellectual property of ECI. This License is not a sale of any rights in the Software. It is licensed to you for use under the following conditions:

* * *

**Software License Agreement**

This agreement is entered into by and between ELECTRICAL CONTROLS, INC. . . . and the LICENSEE identified in the software during installation. The effective date shall be the date of installation by the Licensee.

1.   ECI grants to Licensee a non-exclusive, non-transferable license to use the software program and related documentation in this package (collectively referred to as software).

2.   The software and related documentation are copyrighted and may not be copied. Unauthorized copying, reverse engineering, decompiling, disassembling, translating, renting, sub-licensing, leasing, distributing, and/or creating derivative works based on the software, in whole or in part, are strictly prohibited. The Software may not be duplicated or copied except for purposes of archival, backup, or replacement of defective media by the

---

[8] *See* **Exhibit D**, ECIMOS Full Function Product Tester Proposal Quote No. 4273, dated November 17, 2011.
[9] *See* **Exhibit E**, Texas Furnace Transaction Order for ECIMOS Quote Nos. 4273, dated January 19, 2012.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**                    **7**

Licensee. No part of the software and/or documentation may be reproduced or transmitted in any form or by any means, including the use of electronic, telecommunications, or mechanical methods (including but not limited to photocopying, printing, faxing, file transfer, email, recording) for any purpose without the express written permission of ECI. TITLE TO THE SOFTWARE IS NOT TRANSFERRED TO LICENSEE BY THIS LICENSE. OWNERSHIP AND TITLE TO THE SOFTWARE AND TO THE ACTUAL CONTENTS OF THIS PACKAGE, INCLUDING THE COPY OF THE SOFTWARE AND THE MEDIA ON WHICH IT IS STORED AND THE ASSOCIATED DOCUMENTATION ARE RETAINED BY ECI.

3. Licensee shall designate one employee as the primary user of the software and provide ECI with that employee's name and telephone number. The software may also be used by other employees in addition to the primary user. In the event Licensee wishes to change the primary user, ECI shall be notified in writing and a written Transfer of License form shall be completed by Licensee. This License is transferable subject to ECI's prior written consent and payment to ECI of any applicable transfer fee(s), and subject to the transferee's agreement in writing to the terms and conditions of this License. Upon any such transfer, the transferor will immediately deliver all copies of the Software to the authorized transferee, and the transferor's rights under this License will automatically terminate. This License is also binding on any involuntary transferee.

4. This License does not include the right to updates, upgrades, or other enhancements except for resolution of bugs as specified under the section Lifetime Software Warranty. However, this License does apply to any update, upgrade, or other enhancement if provided by ECI. ECI reserves the right to require an additional license and fee for use of the Software on any upgraded computer, processor, operating system, or controller.

5. This license and your right to use this software automatically terminates upon failure to comply with any provision of this License agreement. ECI also may terminate this License upon notice to the user for failure to comply with any provision of this License agreement. Immediately upon the termination of the License, the former Licensee shall destroy or return to ECI all copies of the Software, including all copies from any adaptation into which such copies are merged including backups or archives (except for individual pieces of user data in a related database). The former Licensee shall provide proof of such destruction and removal and/or from any and all systems including destruction and/or deletion of backups, archives, and any other media, which contains ECI software.

**Confidentiality / Non-Disclosure**

The software and related materials are considered confidential. Licensee agrees to handle the software in a manner such that access is limited to personnel within Licensee's organization who have a need to have access to the software, and Licensee shall inform the personnel of their obligations under this Agreement. Licensee is also required to take all reasonable steps necessary to prevent the disclosure of the software to any third party. Licensee shall promptly notify ECI of any disclosure of the software inconsistent with this Agreement.

**Rights**

ECI retains all rights not expressly granted. Nothing in this license agreement constitutes a waiver of ECI's rights under U.S. copyright laws or any other Federal or State law.

* * *

**In General**

The information contained herein this document is intended for the exclusive use of the said manufacturer. This proposal contains proprietary information pertaining to the hardware and software design of the ECI Integrated Process Control System as well as proprietary business practices and philosophies of ECI including part and design specifications. Contained herein are detailed descriptions of our processes and data retrieval/collection capabilities.

All information in the said document is strictly proprietary and may not be reproduced, redistributed, or shared in writing orally or any such form with any persons other than those directly addressed on the title page of this document.

25.     Upon information and belief, and in violation of their license agreements with ECIMOS, Defendants have utilized and continue to utilize unauthorized, infringing copies of ECIMOS' copyrighted content registered with the United States Copyright Office, for at least the following subset of IPCS Monument products descriptively named as follows: "Lay In," "Key Component Scanning," "On-Demand Printing," "Leak Test Gas Subassembly and Final Leak Testing," "Evacuation and Charge," "Run Test," "Final Refrigerant Leak Testing," "Integrated Work Instructions," "3D RealityPV," and ECIMOS' most coveted IPCS product, the Customer Packout Watchdog with ERP bill of material interfaces including back-flushing automation.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**          **9**

26.     It should be noted that as computer operating systems advanced in the HVAC-R industry, and in order to serve their customers, ECIMOS was required to develop upgrades, which were ultimately licensed and sold to existing ECIMOS customers. These upgrades were required for the IPCS to remain operable on the new computer operating systems.

27.     For example, in the late 1990's and early 2000's, HVAC-R member manufacturers were required to acquire from ECIMOS the Windows upgrade of the DOS-based ECIMOS IPCS. This upgrade was necessary to convert the IPCS from Microsoft DOS to Microsoft Windows and then to run on the new Microsoft Windows XP computer operating system.

28.     Similarly, in 2011, ECIMOS was required to roll out the next IPCS upgrade transaction made necessary by Microsoft discontinuing its Windows XP operating system and replacing it with Windows 7, a Net Framework operating system for Internet applications. By that time, the ECIMOS Monuments contained obsolete components that also needed to be upgraded to Internet-like functionality and compatibility. These upgrades were costly both to ECIMOS and its HVAC-R customers. [10] Concurrently, HVAC-R manufacturers were also upgrading and redesigning their own A/C products to become smart devices for the Internet age.

29.     Each of these upgrades amounted to entirely new transactions by and among ECIMOS with its HVAC-R member customers, where ECIMOS would submit written proposals for the upgraded software that contained the same standard terms and conditions, including the same license agreement and licensing terms, that ECIMOS customers were required to agree to in order to receive the upgrades and continue to use the IPCS software and Monuments.  There

---

[10] For example, it is estimated that approximately 90% of the 27 million lines of ECIMOS programming code was upgraded so that it would perform on Windows 7 and the Net framework.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**          **10**

were no exceptions. Every ECIMOS HVAC-R customer using IPCS complied by issuing and agreeing to the proposed transactions, thereby agreed to the ECIMOS licensing agreement and its terms.

30.     As a result of the new highly-technical products development, ECIMOS applied for and was awarded three new copyrights and one patent to protect its innovative approach that created an integration scheme of three main internet-like networks (*i.e.*, the networks of the Manufacturer's smart-Air Conditioner, the ECIMOS IPCS Monuments, and Microsoft Corporation's SQL Server and its Database), an integration scheme of which is utilized by ECIMOS customers, including the Defendants.

### The Copyrighted Works Infringed by Defendants

31.     The IPCS contains a significant amount of novel, highly-technical and proprietary material including, without limitation, ECI Monument Maintenance Drawings, ECI authored database creating Microsoft SQL script execution code, Microsoft NET Framework execution code, operator screens, reports, operations manuals, application programming three network integration schemes in the form of HVAC-R valid tests and HVAC-R test procedure templates, all of which ECIMOS goes to great length to protect, including by designating the material as confidential (and requiring that confidentiality be maintained), registering copyrights with the US Copyright Office, and/or applying for patent protection with the US Patent and Trademark Office.

32.     As a result of these upgrades, ECIMOS developed additional intellectual property and obtained an issued patent and three separate copyright registrations. Generally speaking, these three copyrights provide a single, common language of automation and interoperability among three separate computer languages for purposes of the IPCS. In order to successfully

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**                    **11**

direct and control the IPCS following these upgrades, ECIMOS developed and authored this common language to integrate the three primary internet-like operating network languages: (1) the HVAC-R member customers' own smart air conditioners and/or smart refrigerators language; (2) the ECIMOS Monuments' language; and (3) the Microsoft SQL Server Computer with its Database language.

**Registration Number TXu002012982**

33.     ECIMOS sought and obtained copyright protection for computer code that allows Microsoft Database control technology to be incorporated into the ECIMOS IPCS on behalf of the HVAC-R member industry manufacturers, which includes the incorporation of run test code (branded as AutoTest$^{tm}$ by ECIMOS) for the Residential Split System A/C that an HVAC-R member produces.

34.     A copy of ECIMOS' Certificate of Registration issued by the United States Copyright Office for this computer code, as well as the deposit materials, is attached hereto as **Exhibit F**, "ECI Database Script Source Code licensed to Carrier A/C for Run Test," Registration Number TXu002012982, issued on December 2, 2015 ("the '982 Copyright").

35.     ECIMOS is the owner of all rights, title, and interest in and to the '982 Copyright, including the right to pursue any and all causes of action related to them.

36.     Upon information and belief, Defendants are infringing the '982 copyright.

**Registration Number TXu001933558**

37.     ECIMOS sought and obtained copyright protection for computer code that allows Microsoft's Database control technology to be incorporated into the ECIMOS IPCS on behalf of the HVAC-R member industry manufacturers, which includes the incorporation of run test

(branded as AutoTest<sup>tm</sup> by ECIMOS) for the Large Commercial Package System A/C that an HVAC-R member produces.

38.     A copy of ECIMOS' Certificate of Registration issued by the United States Copyright Office for this computer code, as well as the deposit materials, is attached hereto as **Exhibit G**, **"**IPCS_ Large_Commercial_Package in Dyersburg.sql," Registration Number TXu001933558, issued on February 18, 2015 ("the '558 copyright").

39.     ECIMOS is the owner of all rights, title, and interest in and to the '558 copyright, including the right to pursue any and all causes of action related to them.

40.     Upon information and belief, Defendants are infringing the '558 copyright.

**Registration Number TXu001933546**

41.     ECIMOS sought and obtained copyright protection for computer code that allows the ECIMOS Monuments to integrate with HVAC-R Members' Smart Air Conditioners and Microsoft's Database control technology to be incorporated into the ECIMOS IPCS on behalf of the HVAC-R member industry manufacturers, which includes the incorporation of run test, (branded as AutoTest<sup>tm</sup> by ECIMOS) for the Large Commercial Package System A/C that an HVAC-R member produces.

42.     A copy of ECIMOS' Certificate of Registration issued by the United States Copyright Office for this computer code, as well as the deposit materials, is attached hereto as **Exhibit H**, "ECI API's for Nordyne's RTFloor_exe Large Package Unit Line," Registration Number TXu001933546, issued February 18, 2015 ("the '546 copyright").

43.     ECIMOS is the owner of all rights, title, and interest in and to the '546 copyright, including the right to pursue any and all causes of action related to them.

**Registration Number TXu001933527**

44.     ECIMOS sought and obtained copyright protection for computer code that allows ECIMOS Monuments to integrate with HVAC-R Members' Smart Air Conditioners and Microsoft's Database control technology to be incorporated into the ECIMOS IPCS on behalf of the HVAC-R member industry manufacturers, which includes the incorporation of run test (branded as AutoTest[tm] by ECIMOS) for the Residential Split System A/C that an HVAC-R member produces.

45.     A copy of ECIMOS' Certificate of Registration issued by the United States Copyright Office for this computer code, as well as the deposit materials, is attached hereto as **Exhibit I**, "ECI API's for Nordyne's RTFloor_exe NOR Line 2&3," Registration Number TXu001933527, issued February 18, 2015 ("the '527 copyright").

46.     ECIMOS is the owner of all rights, title, and interest in and to the '527 copyright, including the right to pursue any and all causes of action related to them.

47.     Upon information and belief, Defendants are infringing the '527 copyright.

**Registration Number TXu001961339**

48.     ECIMOS sought and obtained copyright protection for computer code that created to an integration scheme of three main Internet-like networks for 1) the HVAC-R Manufacturer's smart air conditioners and/or smart refrigerators, 2) the ECIMOS IPCS Monuments, and 3) the Microsoft Corporation's SQL Server

49.     A copy of ECIMOS' Certificate of Registration issued by the United States Copyright Office for this computer code, as well as excerpts of the deposit materials, is attached hereto as **Exhibit J**, "ECIMOS - Electrical Controls Inc. Manufacturing Operating System,

VB.Net Source Code," Registration Number TXu001961339, issued on May 6, 2015 ("the '339 Copyright").

50.     ECIMOS is the owner of all rights, title, and interest in and to the '339 Copyright, including the right to pursue any and all causes of action related to them.

51.     Upon information and belief, Defendants are infringing the '339 copyright.

### Registration Number TXu001961346

52.     ECIMOS sought and obtained copyright protection for its unique Scripting programming language source code that integrated into one language the control of the three different languages of the three main Internet-like networks for: (1) the HVAC-R Manufacturer's smart air conditioners and/or smart refrigerators, (2) the ECIMOS IPCS Monuments, and (3) the Microsoft Corporation's SQL Server.

53.     A copy of ECIMOS' Certificate of Registration issued by the United States Copyright Office for this computer code, as well as the deposit materials, is attached hereto as **Exhibit K**, "Electrical Controls Inc. Manufacturing Operating System, API's- ECIScript, Programming Language," Registration Number TXu001961346, issued on May 6, 2015 ("the '346 copyright").

54.     ECIMOS is the owner of all rights, title, and interest in and to the '346 copyright, including the right to pursue any and all causes of action related to them.

55.     Upon information and belief, Defendants are infringing the '346 copyright.

### Registration Number TXu001961665

56.     ECIMOS sought and obtained copyright protection for its unique database creating scripting source code that integrates all 72 Monument products data simultaneously into one database to control and interact with the three main Internet-like networks for: (1) the

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**          **15**

HVAC-R Manufacturer's smart air conditioners and/or smart refrigerators, (2) all of the ECIMOS IPCS Monuments, and (3) the Microsoft Corporation's SQL Server.

57.    A copy of ECIMOS' Certificate of Registration issued by the United States Copyright Office for this computer code, as well as the deposit materials, is attached hereto as **Exhibit L**, "ECIMOS-Electrical Controls, Inc. Manufacturing Operating System, ECIMOSsql Script Source Code," Registration Number TXu001961665, issued on May 6, 2015 ("the '665 copyright").

58.    ECIMOS is the owner of all rights, title, and interest in and to the '665 copyright, including the right to pursue any and all causes of action related to them.

59.    Upon information and belief, Defendants are infringing the '665 copyright.

**ECIMOS' Discovery of Defendants' Infringement**

60.    Beginning in about 2015, ECIMOS' contact with Defendants slowed to a crawl as ECIMOS received fewer and fewer service calls from Defendants for technical support. ECIMOS believed that Defendants had either secured in-house technical support for the ECIMOS IPCS products, or they had discontinued its use. Alternatively, ECIMOS assumed that Defendants had continued its use on Microsoft's Windows XP, which was perpetually licensed according to the terms of the ECIMOS Licensing Agreement.

61.    On or about March 22, 2021, ECIMOS received a phone call from an employee of Defendants seeking technical support, which supported ECIMOS' suspicion that Defendants had secured in-house technical support. During the phone call it was learned that the employee was an HVAC-R Quality Test Engineer employed by Defendants. Upon information and belief, this employee's job responsibility included using and servicing the ECIMOS IPCS ensemble of

products, including its one-common language integration to the Defendant's HVAC-R products, the Monuments, and the Microsoft Database Control.

62.     According to the employee, the purpose of the call was to obtain technical support concerning an error message displayed on one of the ECIMOS IPCS computers and to obtain troubleshooting assistance to rectify the problem. The error related to the ECIMOS Monument branded as AutoTest[tm].

63.     According to the employee, production was no longer possible, and production had stopped as a result. ECIMOS assumed that the Defendants were in good standing with ECIMOS under the terms of the license, even though Defendants had not been in recent contact with ECIMOS.

64.     When the error message was recited to ECIMOS, ECIMOS recognized the error message as being identical to its own copyrighted error message. ECIMOS requested the Defendants' employee to provide a photograph of the error message so that ECIMOS could find at what circumstance or point of operation the message had appeared in order to troubleshoot the problem.

65.     Upon receipt of the photograph, ECIMOS was shocked to learn that the Defendants' computer screen did not depict an ECIMOS error screen. Instead, the error screen depicted the information of Logical Systems, Inc. ("LSI") and prominently displayed the LSI identifying acronym DALS, which is the LSI brand-name for its corollary to ECIMOS' IPCS.[11]

66.     Upon information and belief, LSI unlawfully obtained a copy of ECIMOS' copyrighted materials from the Defendants, converted those materials, rebranded them and

---

[11] **Exhibit M**, photograph transmitted to ECIMOS from Defendants' employee in March 2021.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**          **17**

installed the infringing copies on Defendants' ECIMOS IPCS Monument computers and on the Microsoft Computer Server and Database.

67.     As indicated above, Defendant AllStyle licensed the full suite of ECIMOS' IPCS products in 2005, which included all of ECIMOS' copyrighted materials.

68.     As previously alleged, upon information and belief, the Defendants provided and/or made available the ECIMOS copyrighted materials to LSI who then copied these materials and/or created infringing derivative works, which, in either case, were illicitly re-branded by LSI and installed on Defendants' networks for their unauthorized use on the Monuments.

69.     The Defendant's A/C Products, ECIMOS' Monuments and the Microsoft Database can only be operated as one integrated system by utilizing ECIMOS' copyrighted material. It is virtually impossible for any technology provider, including LSI, to provide that identical licensed copyrighted content to seamlessly integrate the ECIMOS products without first obtaining an unauthorized copy and directly infringing the ECIMOS copyrights or creating derivative works.

70.     It is further alleged on information and belief that LSI, after obtaining unauthorized copies of ECIMOS' copyrighted materials, either directly copied the materials or executed an artifice computer automation routine, which would convert the ECIMOS copyrighted materials using their contents and performing a one-to-one masking routine, thus creating, if not a directly infringing work of ECIMOS' copyrighted materials, a derivative infringing work of ECIMOS' copyrighted materials.

71.     Upon information and belief, Defendants knowingly violated the Licensing Agreement, individually or in combination with LSI, and would necessarily have had actual

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION          18**

knowledge, or at a minimum, constructive knowledge, at or near the time, that LSI would copy and use ECIMOS' copyrighted materials in order to integrate Defendants' Smart A/C Products with the ECIMOS' Monuments and with the Microsoft Database Control, all of which were already in use at the Defendants' manufacturing facilities.

### Notice of Infringement to Defendants

72.     ECIMOS notified Defendants of their infringement in August 2021, within months of being contacted by Defendants' employee.

### Nondisclosure Agreement and Request for Inspection

73.     In November 2021, ECIMOS executed its termination of Defendants use rights as provided for in the Licensing Agreement and sought the return of its copyrighted material and security keys. ECIMOS further requested that Defendants provide an onsite inspection of their facilities to prove or disprove the existence and use of unauthorized copies of the ECIMOS copyrighted materials in use on the Monuments (and throughout the network). Defendants refused these requests.

74.     ECIMOS reiterates its willingness to enter into a non-disclosure agreement with Defendants in order to conduct a forensic analysis and an onsite inspection, including a review of at least the following by an ECIMOS company representative, an ECIMOS' expert, and its undersigned counsel:

    a.      Identify and review the Monuments currently in use;

    b.      Identify and review the Valid Tests and Test Procedures currently in use;

    c.      Examine and record the algorithms currently in use on each Monument, including but not limited to, those branded by ECIMOS as LayIn[tm], KeyScan[tm], LeakProof[tm], VacuCharge[tm] , AutoTest[tm] and Packout[tm] Watchdog;

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**          **19**

      d.     Compare the ECIMOS Operations Manual to the new Operations Manual by observing the Operators interaction with the Monuments.

      e.     Meet with the Quality Department to obtain its processing and testing requirements that it provided for the Monuments.

      f.     Meet with the Defendants' IT Department to discuss the migration process that was followed to change over from the ECIMOS Microsoft Database Control of its Monuments and Defendants' A/Cs to any new Monuments methodology.

75.     As listed above in connection with this inspection, ECIMOS must be allowed to conduct a forensic analysis and comparison of the testing methods of Defendants' current and prior databases, including their structures, with the ECIMOS copyrighted materials.

<u>CAUSES OF ACTION</u>

**Count 1:**     **Copyright Infringement – the '982 Copyright.**

76.     ECIMOS repeats and realleges each and every allegation contained in paragraphs 1- 75.

77.     The '982 copyright is comprised of computer copyrightable subject matter under 17 U.S.C. § 102, and is registered with the United States Copyright Office as Registration Number TXu 002012982.

78.     ECIMOS is the owner of all rights, title, and interest in and to the '982 copyright.

79.     Defendants, by their wrongful acts alleged herein, have infringed, and continue to infringe the '982 copyright.

80.     Defendants have made and distributed numerous HVAC-R products utilizing an unauthorized, infringing copy of the '982 copyright.

81.     Defendants have directly infringed and continue to directly infringe the '982 copyright and are indirectly infringing by way of inducing infringement and/or is contributing to the infringement of the '982 copyright.

82.     Defendants' acts of infringement have been willful, deliberate, and in reckless disregard of ECIMOS' rights, and Defendants will continue unless enjoined by this Court.

83.     As a direct and proximate cause of Defendants' conduct, Defendants have damaged ECIMOS and received monetary gains from the unauthorized, infringing copy and use of the '982 copyright. ECIMOS is entitled to recover from Defendants, in an amount to be determined at trial, the damages it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of their acts of infringement.

84.     Defendants are jointly and severally liable for the acts described herein, or, at a minimum, vicariously liable for the acts of LSI.

**Count 2:        Copyright Infringement – the '558 Copyright.**

85.     ECIMOS repeats and realleges each and every allegation contained in paragraphs 1- 75.

86.     The '558 copyright is comprised of computer copyrightable subject matter under 17 U.S.C. § 102, and is registered with the United States Copyright Office as Registration Number TXu001933558.

87.     ECIMOS is the owner of all rights, title, and interest in and to the '558 copyright.

88.     Defendants, by their wrongful acts alleged herein, have infringed, and continue to infringe the '558 copyright.

89.     Defendants have made and distributed numerous HVAC-R products utilizing an unauthorized, infringing copy of the '558 copyright.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION          21**

90.     Defendants have directly infringed and continue to directly infringe the '558 copyright, and indirectly infringing by way of inducing infringement and/or is contributing to the infringement of the '558 copyright.

91.     Defendants' acts of infringement have been willful, deliberate, and in reckless disregard of ECIMOS' rights, and Defendants will continue unless enjoined by this Court.

92.     As a direct and proximate cause of Defendants' conduct, Defendants have damaged ECIMOS and received monetary gains from the unauthorized, infringing copy and use of the '558 copyright. ECIMOS is entitled to recover from Defendants, in an amount to be determined at trial, the damages it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of their acts of infringement.

93.     Defendants are jointly and severally liable for the acts described herein, or, at a minimum, vicariously liable for the acts of LSI.

**Count 3:        Copyright Infringement – the '546 Copyright.**

94.     ECIMOS repeats and realleges each and every allegation contained in paragraphs 1- 75.

95.     The '546 copyright is comprised of computer copyrightable subject matter under 17 U.S.C. § 102, and is registered with the United States Copyright Office as Registration Number TXu001933546.

96.     ECIMOS is the owner of all rights, title, and interest in and to the '546 copyright.

97.     Defendants, by their wrongful acts alleged herein, have infringed, and continue to infringe the '546 copyright.

98.     Defendants have made and distributed numerous HVAC-R products utilizing an unauthorized, infringing copy of the '546 copyright.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION                    22**

99.     Defendants have directly infringed and continue to directly infringe the '546 copyright, and indirectly infringing by way of inducing infringement and/or is contributing to the infringement of the '546 copyright.

100.    Defendants' acts of infringement have been willful, deliberate, and in reckless disregard of ECIMOS' rights, and Defendants will continue unless enjoined by this Court.

101.    As a direct and proximate cause of Defendants' conduct, Defendants have damaged ECIMOS and received monetary gains from the unauthorized, infringing copy and use of the '546 copyright. ECIMOS is entitled to recover from Defendants, in an amount to be determined at trial, the damages it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of their acts of infringement.

102.    Defendants are jointly and severally liable for the acts described herein, or, at a minimum, vicariously liable for the acts of LSI.

**Count 4:       Copyright Infringement – the '527 Copyright.**

103.    ECIMOS repeats and realleges each and every allegation contained in paragraphs 1- 75.

104.    The '527 copyright is comprised of computer copyrightable subject matter under 17 U.S.C. § 102, and is registered with the United States Copyright Office as Registration Number TXu001933527.

105.    ECIMOS is the owner of all rights, title, and interest in and to the '527 copyright.

106.    Defendants, by their wrongful acts alleged herein, have infringed, and continue to infringe the '527 copyright.

107.    Defendants have made and distributed numerous HVAC-R products utilizing an unauthorized, infringing copy of the '527 copyright.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION          23**

108.   Defendants have directly infringed and continue to directly infringe the '527 copyright, and indirectly infringing by way of inducing infringement and/or is contributing to the infringement of the '527 copyright.

109.   Defendants' acts of infringement have been willful, deliberate, and in reckless disregard of ECIMOS' rights, and Defendants will continue unless enjoined by this Court.

110.   As a direct and proximate cause of Defendants' conduct, Defendants have damaged ECIMOS and received monetary gains from the unauthorized, infringing copy and use of the '527 copyright. ECIMOS is entitled to recover from Defendants, in an amount to be determined at trial, the damages it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of their acts of infringement.

111.   Defendants are jointly and severally liable for the acts described herein, or, at a minimum, vicariously liable for the acts of LSI.

**Count 5:      Copyright Infringement – the '339 Copyright.**

112.   ECIMOS repeats and realleges each and every allegation contained in paragraphs 1- 75.

113.   The '339 copyright is comprised of computer copyrightable subject matter under 17 U.S.C. § 102, and is registered with the United States Copyright Office as Registration Number TXu001961339.

114.   ECIMOS is the owner of all rights, title, and interest in and to the '339 copyright.

115.   Defendants, by their wrongful acts alleged herein, have infringed, and continue to infringe the '339 copyright.

116.   Defendants have made and distributed numerous HVAC-R products utilizing an unauthorized, infringing copy of the '339 copyright.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION          24**

117.     Defendants have directly infringed and continue to directly infringe the '339 copyright, and indirectly infringing by way of inducing infringement and/or is contributing to the infringement of the '339 copyright.

118.     Defendants' acts of infringement have been willful, deliberate, and in reckless disregard of ECIMOS' rights, and Defendants will continue unless enjoined by this Court.

119.     As a direct and proximate cause of Defendants' conduct, Defendants have damaged ECIMOS and received monetary gains from the unauthorized, infringing copy and use of the '339 copyright. ECIMOS is entitled to recover from Defendants, in an amount to be determined at trial, the damages it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of their acts of infringement.

120.     Defendants are jointly and severally liable for the acts described herein, or, at a minimum, vicariously liable for the acts of LSI.

**Count 6:      Copyright Infringement – the '346 Copyright.**

121.     ECIMOS repeats and realleges each and every allegation contained in paragraphs 1- 75.

122.     The '346 copyright is comprised of computer copyrightable subject matter under 17 U.S.C. § 102, and is registered with the United States Copyright Office as Registration Number TXu001961346.

123.     ECIMOS is the owner of all rights, title, and interest in and to the '346 copyright.

124.     Defendants, by their wrongful acts alleged herein, have infringed, and continue to infringe the '346 copyright.

125.     Defendants have made and distributed numerous HVAC-R products utilizing an unauthorized, infringing copy of the '346 copyright.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION          25**

126.    Defendants have directly infringed and continue to directly infringe the '346 copyright, and indirectly infringing by way of inducing infringement and/or is contributing to the infringement of the '346 copyright.

127.    Defendants' acts of infringement have been willful, deliberate, and in reckless disregard of ECIMOS' rights, and Defendants will continue unless enjoined by this Court.

128.    As a direct and proximate cause of Defendants' conduct, Defendants have damaged ECIMOS and received monetary gains from the unauthorized, infringing copy and use of the '346 copyright. ECIMOS is entitled to recover from Defendants, in an amount to be determined at trial, the damages it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of their acts of infringement.

129.    Defendants are jointly and severally liable for the acts described herein, or, at a minimum, vicariously liable for the acts of LSI.

**Count 6:        Copyright Infringement – the '665 Copyright.**

130.    ECIMOS repeats and realleges each and every allegation contained in paragraphs 1- 75.

131.    The '665 copyright is comprised of computer copyrightable subject matter under 17 U.S.C. § 102, and is registered with the United States Copyright Office as Registration Number TXu001961665.

132.    ECIMOS is the owner of all rights, title, and interest in and to the '665 copyright.

133.    Defendants, by their wrongful acts alleged herein, have infringed, and continue to infringe the '665 copyright.

134.    Defendants have made and distributed numerous HVAC-R products utilizing an unauthorized, infringing copy of the '665 copyright.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION                    26**

135.     Defendants have directly infringed and continue to directly infringe the '665 copyright, and indirectly infringing by way of inducing infringement and/or is contributing to the infringement of the '665 copyright.

136.     Defendants' acts of infringement have been willful, deliberate, and in reckless disregard of ECIMOS' rights, and Defendants will continue unless enjoined by this Court.

137.     As a direct and proximate cause of Defendants' conduct, Defendants have damaged ECIMOS and received monetary gains from the unauthorized, infringing copy and use of the '665 copyright. ECIMOS is entitled to recover from Defendants, in an amount to be determined at trial, the damages it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of their acts of infringement.

138.     Defendants are jointly and severally liable for the acts described herein, or, at a minimum, vicariously liable for the acts of LSI.

**Count 8:        Breach of Contract**.

139.     ECIMOS incorporates by reference the foregoing allegations contained in paragraphs 1 – 138.

140.     Beginning in 2005, Defendants accepted the ECIMOS standard terms and conditions, including the software license agreement, associated with ECIMOS IPCS Proposal Quote No. 1896, dated November 11, 2004, and ECIMOS IPCS Proposal Quote No. 2027, dated February 5, 2005.

141.     Subsequent to 2005, the Defendants have, thousands of times daily, acted to accept and confirm the License Agreement, which provides that "[b]y using ECI software you accept the following terms of this License Agreement." Then in the 2011 to 2012 timeframe, the Defendants acted to accept and confirm the License Agreement twice daily, following the

additional transaction for the ECIMOS Full Function Product Tester Proposal Quote No. 4273, dated November 17, 2011.

142.    The ECIMOS Proposals with their attendant terms and conditions, including the software licensing terms, coupled with the transaction orders issued by Defendants and use of the ECIMOS software, constitute valid and enforceable written contracts entered into by ECIMOS and Defendants (collectively referred to as the "License Agreements").

143.    ECIMOS is a party to the License Agreements, and thus has standing to sue for breach thereof.

144.    The License Agreements provide that Defendants understood and agreed that ECIMOS' hardware and software designs of the IPCS are proprietary to ECIMOS.

145.    The License Agreements provide that ECIMOS retained ownership of the IPCS software, that no ownership in the IPCS software, source code, or any other intellectual property of ECIMOS was being conferred to Defendants and that title to the ECIMOS software was not being transferred to Defendants, but rather that it was being retained by ECIMOS.

146.    The License Agreements also provide that Defendants understood and agreed, among other things, that:

      a.    The ECIMOS software and related documentation are copyrighted and may not be copied;

      b.    That unauthorized copying, reverse engineering, decompiling, disassembling, translating, renting, sub-licensing, leasing, distributing, and/or creating derivative works based on the software, in whole or in part, are strictly prohibited;

      c.    That the ECIMOS software may not be duplicated or copied except for purposes of archival, backup, or replacement of defective media by the Licensee;

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**                                    **28**

d. That the License Agreements do not include the right to updates, upgrades, or other enhancements except for resolution of bugs as specified under the section Lifetime Software Warranty.

147.   The License Agreements also provide that Defendants understood and agreed that they were being conferred with a non-exclusive, non-transferable license to use the software program and related documentation, and that:

a. The license and their right to use the software automatically terminates upon failure to comply with any provision of the License Agreements. That ECIMOS also may terminate this License upon notice to the Defendants for failure to comply with any provision of this License agreement. Immediately upon the termination of the License, the Defendants shall destroy or return to ECIMOS all copies of the Software, including all copies from any adaptation into which such copies are merged including backups or archives (except for individual pieces of user data in a related database).

148.   Defendants have breached the License Agreements in at least the following ways:

a. By directly infringing ECIMOS copyrighted software, including but not limited to, the '982, '558, '546, and the '527 copyrights, including attempting to copy (or create derivative works), and actually copying (or creating derivative works) of ECIMOS software, in whole or in part;

b. By indirectly and/or contributorily infringing ECIMOS copyrighted software, including but not limited to, the '982, '558, '546, and the '527 copyrights, by procuring the services of others to copy (or create derivative works), and actually copying (or creating derivative works) of ECIMOS software, in whole or in part;

c. Disregarding the proprietary and exclusive nature of ECIMOS's intellectual property by attempting to copy (or create derivative works), and actually copying (or creating derivative works) of ECIMOS software by themselves or through others;

d. Disregarding the limited, non-exclusive license to only use ECIMOS' software in connection in connection with the scope of the License Agreements; and

e. Misusing, misappropriating, failing to return, and disclosing the ECIMOS software to others in violation of the License Agreements.

149.   Defendants' breaches of License Agreements were material.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**          **29**

150.     Defendants' breaches of the License Agreements have harmed ECIMOS and caused it to suffer injury and damages, which were a natural, probable, and foreseeable consequence of Defendants' breaches.

**Count 9:      Permanent Injunctive Relief**

151.     ECIMOS repeats and realleges each and every allegation contained in paragraphs 1- 150.

152.     ECIMOS requests that a permanent injunction issue precluding Defendants from the infringing acts complained of herein.

153.     Unless Defendants and those acting on their behalf are permanently enjoined from the infringing acts complained of herein, among any other relief to which ECIMOS may show itself entitled, ECIMOS will suffer irreparable harm. ECIMOS has no other adequate remedy at law. This equitable remedy is warranted upon consideration of the balance of hardships between ECIMOS and the defendants. Further, the permanent injunction being sought would not hurt the public interest.

154.     ECIMOS respectfully requests that the Court grant ECIMOS a permanent injunction if final judgement favors ECIMOS.

<u>**ATTORNEYS' FEES**</u>

155.     ECIMOS repeats and realleges each and every allegation contained in paragraphs 1- 155.

156.     Pursuant to 17 U.S.C. § 505, Defendants are liable for costs and reasonable attorneys' fees incurred by ECIMOS in connection with this action.

157.     Pursuant to the Texas Civil Practices and Remedies Code Chapter 38.001 and/or other Texas statutes or laws, Defendants are liable for reasonable attorneys' fees incurred by ECIMOS in connection with this action.

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION          30**

## **CONDITIONS PRECEDENT**

158.    ECIMOS repeats and realleges each and every allegation contained in paragraphs 1- 157.

159.    All conditions precedent to ECIMOS' claims for relief have been performed. Alternatively, all conditions precedent to ECIMOS' claims should be excused based upon the conduct complained of herein.

## **JURY DEMAND**

160.    ECIMOS demands a trial by jury.

## **PRAYER**

161.    Wherefore, ECIMOS respectfully requests that this Court award a judgment against Defendants for the following:

   a.   Compensatory damages, including but not limited to, actual damages and Defendants' profits attributable to the infringement, and/or enhanced statutory damages as a result of Defendants' willful copyright infringement;

   b.   A permanent injunction precluding Defendants from infringing ECIMOS' copyrights in the future;

   c.   The return of the infringing works to ECIMOS;

   d.   Reasonable attorneys' fees;

   e.   Costs, including costs of court;

   f.   Pre-judgment and post-judgment interest; and

   g.   All other relief at law or in equity to which ECIMOS is entitled.

Dated this 5th day of May 2023.

Respectfully submitted:

By: s/ Stephen W. Abbott_____

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION          31**

Stephen W. Abbott – Attorney-in-Charge
Texas Bar No. 00795933
SDTX Bar No. 26562
Emil Thomas Bayko
Texas Bar No. 01864500
SDTX Bar No. 2815
Matthew J. M. Prebeg
Texas Bar No. 00791465
SDTX Bar No. 603742
Christopher M. Faucett
Texas Bar No. 00795198
SDTX Bar No. 31046
Brent T. Caldwell
Texas Bar No. 24056971
SDTX Bar No. 827326
**BAYKO, PREBEG, FAUCETT & ABBOTT PLLC**
8441 Gulf Freeway, Suite 307
Houston, Texas 77002
Tel: (832) 742-9269
Fax: (832) 742-9261
tbayko@bpfalawfirm.com
mprebeg@bpfalawfirm.com
cfaucett@bpfalawfirm.com
sabbott@bpfalawfirm.com
bcaldwell@bpfalawfirm.com

**ATTORNEYS FOR PLAINTIFF
ECIMOS, LLC.**